UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

| | |
|---|---|
| CHRISTOPHER PIERCE, individually | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FLANIGAN'S ENTERPRISES, INC, | ) |
| a Florida Corporation, and | ) |
| CIC INVESTORS #65, LTD d/b/a | ) |
| FLANIGAN'S SEAFOOD BAR AND | ) |
| GRILL, a Florida limited partnership | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMAND |
| | ) |

# COMPLAINT

COMES NOW, the Plaintiff, CHRISTOPHER PIERCE ("PIERCE" or "PLAINTIFF"), by and through the undersigned counsel, files this action against Defendants, FLANIGAN'S ENTERPRISES, INC, a Florida Corporation ("F. ENTERPRISES") and CIC INVESTORS #65, LTD d/b/a FLANIGAN'S SEAFOOD BAR AND GRILL, a Florida limited partnership ("FLANIGAN'S") and (collectively referred to as "Defendants") and states as follows:

## NATURE OF THE ACTION

1. This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and The Civil Rights Act of 1991, based on unlawful employment practices on the basis of race and to provide appropriate relief to PIERCE who was adversely affected by such practices. PIERCE alleges that Defendants subjected PIERCE to a hostile work environment based on his race, Black. PIERCE further alleges that Defendant was constructively terminated based on his race.

## JURISDICTION, PARTIES, AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337 and 1343. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C § 1981a.

3. Plaintiff is a member of a protected class as an adult black male.

4. Plaintiff currently resides in West Palm Beach, Florida and is otherwise *sui juris*.

5. Defendant, F. ENTERPRISES is a Florida Corporation doing business in the State of Florida with its principal place of business at 5059 NE 18th Avenue Fort Lauderdale, FL 33334.

6. Defendant FLANIGAN'S is a Florida limited partnership with its principal place of business at 2335 STATE ROAD 7, SUITE 100 WELLINGTON, FL 33414 and owns and operates a full-service restaurant at 2335 S. St 7, Wellington, FL 33414.

7. Defendant F. ENTERPRISES owns, operates and is the General Partner of FLANIGAN'S.

8. Venue is proper in the United States Court of the Southern District of Florida because the Plaintiff resides in, Defendants conduct business in, and all of the events giving rise to the Plaintiff's claims of the employment practices alleged to be unlawful were committed, in Palm Beach County, Florida which is within the jurisdiction of the United States District Court for the Southern District of Florida.

## PROCEDURAL PREREQUISITES

9. On or around September 21, 2018, PIERCE timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

10. The EEOC issued PIERCE a Right to Sue dated July 29, 2020, thereby giving PIERCE a private right of action in this United States District Court under Title VII. *See* "Right to Sue Letter" attached hereto marked as "Exhibit A."

## STATEMENT OF CLAIMS

11. In December 2017, Plaintiff was working at Flanigan's Seafood Bar and Grill located at 2405 10th Avenue North, Lake Worth, FL 33461 (Store #12).

12. On or around December 8, 2017, while Plaintiff was working as a line cook with John, who Plaintiff believes was a new manager at the time. John was in the weeds while working the window. Plaintiff was performing well and was receiving compliments which seemed to agitate John as John began shouting at Plaintiff, four (4) to five (5) times, a rude quote said by a slave owner in the satirically racially charged movie Django: "Django, you uppity son of bitch!"

13. Plaintiff was extremely offended and shocked that John, a manager, would use such racially toxic language.

14. Plaintiff reported John's discriminatory behavior to the Lead Line Cook, the General Manager, and a supervisor who all brushed off Plaintiff's complaints of discrimination and no remedial steps or actions were taken. Plaintiff quit shortly thereafter as he did not want to subject himself to an environment in which he felt discriminated against by management without reproach.

15. On or around March 10, 2018, Plaintiff began working the day shift at Defendant FLANIGAN'S location as a cook.

16. On or around the week of March 14, 2018, FLANIGAN'S General Manager, Ken, (hereinafter "GM Ken") approached Plaintiff and said in a sharp voice, "Turn that hat around or you won't get paid this week!" Plaintiff did not think anything of it until a short while later Plaintiff

overheard GM Ken in the kitchen berating, "Who keeps playing all this damn hip-hop crap on the radio?" GM Ken then looked around, looked right at Plaintiff, smiled, and said, "I bet it was Chris." Plaintiff was deeply offended because Plaintiff is a fan of all kinds of music, but GM Ken squarely implied that because Plaintiff was black, he must like rap music. Combined with the hat to the back remark, Plaintiff felt singled out and discriminated against simply because of the color of his skin.

17. On or around the week of March 14, 2018, during an extremely busy time in FLANIGAN'S kitchen, while Plaintiff was hard at work, FLANIGAN'S Manager, Dave (hereinafter "Manager Dave"), approached Plaintiff in the middle of the kitchen and said, "Damn boy, you are sweating like a watermelon at a Baptist Church!"

18. Plaintiff was gobsmacked by the demeaning, derogatory, and blatantly racial remark made by one of his supervisors, Plaintiff could only stop what he was doing and just looked at Manager Dave in utter and complete shock.

19. Ignoring Plaintiff's obvious humiliation, Manager Dave laughed and proceeded to go to another FLANIGAN'S Manager, Austin Steller (hereinafter "Manager Steller"), and repeated the demeaning, derogatory, and blatantly racial remark and both Managers looked at Plaintiff laughing at the hilarity of the FLANIGAN'S managerial staff's palpable racism.

20. Manager Dave repeated the same demeaning, derogatory, and blatantly racial remark to Plaintiff on multiple occasions, usually on Saturdays when there was a rush and Plaintiff was sweating while hard at work.

21. On or around March 17, 2018, while Plaintiff was working in the kitchen, an order of chicken wings was sent back with complaints that the same were undercooked. Manager Steller

looked down the line at Plaintiff and yelled, "Man come on Chris! Tighten up! Hell, I thought all black people knew how to cook chicken!"

22. Plaintiff was once again forced to endure racially toxic language, by a supervisor, in front of his co-workers, based solely on the color of his skin.

23. Plaintiff could not get Manager Steller's discriminatory and degrading comment out of his head. Plaintiff went home that night and shared the appalling racist language he was being subjected to by his supervisors at FLANIGAN'S with his wife who told Plaintiff to quit the perverse work environment. However, Plaintiff needed to support his family and could not afford to quit, leaving Plaintiff feeling dejected.

24. On March 28, 2018, while Plaintiff was working, Manager Dave came into FLANIGAN'S and punched Plaintiff on his side while saying, "What's up my nigga!" Plaintiff replied by telling Manager Dave to not call Plaintiff that as it was highly offensive, to which Manager Dave responded that Plaintiff had his "panties in a bunch."

25. Despite Plaintiff directly telling Manager Dave that Plaintiff found the word "nigga" offensive, Manager Dave proceeded to call Plaintiff a "nigga" on multiple occasions thereafter.

26. On May 16, 2018, Plaintiff was on his way to his son's graduation when he received a call from Manager Steller demanding to know why Plaintiff decided not to call or show up for work. Plaintiff reminded Manager Steller that Manager Steller had approved Plaintiff to have the day off to attend his son's graduation.

27. Upon returning to work, Plaintiff learned from another employee that Manager Steller and Manager Dave were accusing Plaintiff of being irresponsive, lazy, and other derogatory names.

28. Plaintiff could not understand why his supervisors were disparaging him when Plaintiff had received approval from said supervisors to have the day off—yet no one from FLANAGAN'S management team approached Plaintiff to apologize for the mix-up. Plaintiff felt his supervisors at FLANAGAN'S thought of Plaintiff as nothing but a "nigga" and not a *person* so there was no need to apologize.

29. Plaintiff asked Manager Steller if he could speak with him privately outside. Plaintiff confronted Manager Steller about the remarks made about Plaintiff, even though he had the day off approved and explained to Manager Steller that Plaintiff was owed an apology.

30. Manager Steller apologized to Plaintiff outside, and Plaintiff thought that was the end. However, while they walked back into FLANAGAN'S kitchen, Manager Steller shouted, "Hey everybody listen up, it was my fault! I gave Chris the day off and I forgot!" Manager Steller looked at Plaintiff smirking and screamed "Sorry Chris!" Manager Steller thereafter wrapped his arms around Plaintiff in a bear hold and squeezed hard causing Plaintiff pain. Plaintiff was beyond mortified he felt like he as if he might begin to weep on the spot.

31. On or around May 19, 2018, Plaintiff was no longer the carefree and smiling person he once was. Plaintiff felt trapped in a hostile work environment he could not leave due to financial responsibilities he owed to his family.

32. Manager Steller, upon noticing Plaintiff's despondent demeaner, asked Plaintiff what he would like to listen to on the radio. Plaintiff responded that he listened to all kinds of music, so Manager Steller was free to put on whatever station he wanted. Manager Steller replied, "Yeah right, I know you like that gangsta shit" and proceeded to turn up the radio blasting rap music

33. Plaintiff was once again humiliated by the use of racially toxic ridicule, by a supervisor, in front of his co-workers, based solely on the color of his skin.

34. Plaintiff once again put his head down and continued to work. Thereafter, a line cook, and Manager Dave were to call orders to Plaintiff so Plaintiff would know when to drop food in the fryer. Manager Dave and the line cook did not call out the orders to Plaintiff and thereafter snickered when Manager Steller would come to Plaintiff looking for food which was never provided to Plaintiff to make.

35. Plaintiff believed Manager Steller knew that Manager Dave and the line cook were not calling out orders to Plaintiff, but Manager Steller did nothing to remediate or defuse the situation, Manager Steller simply berated Plaintiff for not having cooked food Plaintiff was never told to cook.

36. Thereafter, Plaintiff, unable to handle the continuous racially charged abuse walked out of FLANAGAN'S to which Manager Steller shouted, "Get the fuck out, don't let the door hit ya where the good Lord split ya!"

37. All conditions precedent to bringing this action have been performed satisfied or have been waived.

38. Due to Defendants unlawful employment practices, it was necessary for Plaintiff to employ the undersigned attorneys to file this action for which Plaintiff will incur costs, expenses, and attorneys' fees.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RACE DISCRIMINATION

39. Plaintiff adopts and realleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

40. Plaintiff is a black adult male and as such is a member of a protected class.

41. At all times material hereto, Plaintiff was subjected to repeat and constant harassment based on his race while employed FLANAGAN'S.

42. The harassment suffered by Plaintiff was sufficiently severe to create a discriminatorily abusive hostile work environment as it altered Plaintiff's work environment causing him to quit.

43. The racially toxic harassment Plaintiff endured was especially severe as the appalling racial comments were directed at Plaintiff by his supervisors and coupled with humiliating incidents at the hands of FLANAGAN'S.

44. Defendants failed to take any remedial action to eliminate the hostile work environment.

45. FLANAGAN'S activities, as incorporated herein, constitute a continuing series of related discriminatory acts and a systematic pattern and practice of discrimination of Plaintiff based on Plaintiff's race.

46. As a direct and proximate result of Defendants' actions described herein, Plaintiff has suffered damages.

## COUNT II
## SECTION 102 OF THE CIVIL RIGHTS ACT OF 1991

47. Plaintiff adopts and realleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

48. Plaintiff is a member of a protected class as a black male.

49. At all times material hereto, Plaintiff was subjected to repeat and perverse harassment based on his race while employed by Defendants.

50. Supervisory and management personnel of Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered Plaintiff's employment.

51. The Defendants violated section 1981 of the United States Code (42 U.S.C. §1981) by engaging in unlawful employment practices prohibited by 42 U.S.C. §1981 by creating, condoning, and perpetuating the discriminatory hostile work environment which interfered with Plaintiff's employment based on his race.

52. The Defendants violated 42 U.S.C. §1981 by engaging in unlawful employment practices prohibited by section 1981 by creating, condoning and perpetuating the discriminatory hostile work environment which interfered with Plaintiff's employment as Plaintiff was treated less favorably than similarly situated employees outside of the Plaintiff's protected class.

53. Supervisory and management personnel of Defendants subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment by knowingly engaging in the hostile and racially based abusive.

54. Defendants acted with malice and reckless disregard or deliberate indifference to Plaintiff's rights under 42 U.S.C. §1981 and the Civil Rights Act of 1991.

55. As a direct and proximate result of Defendants' conduct in intentionally condoning the racial harassment and discrimination of Plaintiff, Plaintiff has suffered damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, CHRISTOPHER PIERCE, respectfully requests that this Court:

A. Grant a permanent injunction enjoining Order the Defendants, FLANIGAN'S ENTERPRISES, INC, a Florida Corporation and CIC INVESTORS #65, LTD d/b/a FLANIGAN'S SEAFOOD BAR AND GRILL, their managers, officers, successors, assigns, and

all persons in active concert or participation with them, from discriminating based on race or engaging in any other employment practice that discriminates on the basis of race or natural origin

B. Order the Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for victims of race and/or national origin based harassment and which eradicate the effects of its past and present unlawful employment practices.

C. Order the Defendants, jointly and severally, to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices, including but not limited to reinstatement or front pay, including pre-judgment interest.

D. Order the Defendants, jointly and severally, to pay compensatory damages to Plaintiff in an amount to be determined at trial to compensate Plaintiff for past and future pecuniary losses resulting from the unlawful practices described herein, including but not limited to, emotional pain and suffering, inconvenience, humiliation, loss of self-esteem and loss of civil rights.

E. Order the Defendants, jointly and severally, pay Plaintiff punitive damages for its malicious and reckless conduct as described herein, in amounts to be determined at trial;

F. Award Plaintiff his reasonable attorney's fees, expenses, and costs for this action.

G. Grant such further relief as the Court deems necessary and proper as public interest, justice, and equity require.

## JURY TRIAL DEMAND

CHRISTOPHER PIERCE demands a jury trial on all questions of fact raised by this Complaint.

Dated: October 8, 2020.

        Respectfully submitted,

        K/S Attorneys at Law

        /s/ Tina El Fadel_____
        Tina El Fadel, Esquire
        Florida Bar # 0091039
        2424 N. Federal Highway Suite 200
        Boca Raton, FL 33431
        PH: (561) 939-8042
        Fax: (561) 750-5083
        tina@ks-law.com
        eservice@ks-law.com